IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CATHERINE MCDONNELL,

        Plaintiff,                    No. CIV S-04-2403 GGH

    vs.

JO ANNE BARNHART,
Commissioner of
Social Security,

        Defendant.               <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is GRANTED, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the plaintiff.

<u>BACKGROUND</u>

        Plaintiff, born March 5, 1945, alleges inability to work due to arthritis and fibromyalgia. She has a complicated history of disability applications and denials which need not be repeated here other than to reiterate the parties' agreement that, for the current application, the time period during which plaintiff must establish disability is the four month period from August

14, 1997 to December 31, 1997, due to the administrative res judicata effect of a prior decision finding that plaintiff was not disabled as of August 14, 1997. Moreover, having been denied disability on her first application, a presumption of continuing nondisability arises. Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985). Plaintiff "can overcome this presumption by proving 'changed circumstances' indicating a greater disability." Id. (quoting Booz v. Secretary, 734 F.2d 1378, 1379-80 (9th Cir.1984)); see also Pearson v. Secretary of Health and Human Services, 780 F. Supp. 682, 686 (E.D. Cal.1991) (presumption from prior decision of continuing non-disability must be overcome by a showing of "changed circumstances" indicating a greater disability).

The procedural history relevant to the current decision is this court's January 31, 2001 recommendation of remand pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record. That opinion contains the previous procedural history. Plaintiff's Exh. A. On remand, the ALJ was directed to further develop the record "by obtaining a consultative examination from a specialist in the field of rheumatology or with expertise in the diagnosis and treatment of fibromyalgia who could opine as to the continuing effect of fibromyalgia, *and* whether the orthopedic evaluation contradicts the evaluation of plaintiff's treating physician and the rheumatology reports upon which he relied." Findings and Recommendations, at 11:14-17 (emphasis added). The ALJ was specifically directed to "redetermine whether plaintiff became disabled prior to expiration of her disability insurance." Id. at 11-12.

In a decision dated June 23, 2004, ALJ Mark C. Ramsey determined plaintiff was not disabled. The ALJ made the following findings:[1]

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).

2

1. The claimant met the disability insured status requirements of the [sic] March 30, 1993, the date the claimant stated she became unable to work, and continues to meet them through December 31, 1997.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date of disability.

3. The medical evidence establishes that the claimant has severe fibromyalgia with pain in multiple areas including but not limited to her back, neck, hands and feet. However she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, and Regulations No. 4.

4. The claimant's subjective complaints regarding her symptoms, including pain and fatigue during the period at issue, are not found to be fully credible as stated above.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting and carrying more than twenty pounds occasionally and ten pounds frequently with standing and walking limited to four to six hours total a day (20 CFR 404.1545).

6. The claimant is able to perform her past relevant work as a keno worker in a casino or as a counter person/cashier in a flower shop. Accordingly, the claimant was not under a "disability," as defined in the Social Security

---

A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Act, at any time through the date of this decision (20 CFR 404.1520(f)). (Tr. at 267-68.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the New Evidence Obtained After Remand Supports a Finding of Disability;  B. Whether the ALJ Erred in Finding That Plaintiff is not Limited in the Use of Her Hands and Arms; C. Whether the ALJ's Evaluation of Plaintiff's Pain Testimony is Legally Insufficient; and D. Whether the ALJ Failed to Properly Consider Dr. Leo's Opinion.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

MEDICAL RECORDS

The summary of medical records submitted prior to the remand is repeated from this court's previous findings and recommendations, and a summary of the record developed after remand will follow.

\\\\\

Treatment records from Kaiser Permanente, (Tr. at 158-78) are the only contemporaneous medical evidence for the period in question. These records show treatment primarily for conditions other than arthritis and fibromyalgia. References to arthritis and fibromyalgia are cursory. Plaintiff was treated in July 1997 for a skin lesion on her nose and for a corneal abrasion. (Tr. at 170-78.) Chart notes dated September 8, 1997 contain cursory references to "fibor/arthr," and reflect blood tests performed on that date, with negative ANA and RA screen. (Tr. at 167-68.) October 1997 chart notes reflect a mammogram and referral for urinary incontinence. (Tr. at 165-66.) November 1997 chart notes again contain cursory references to a diagnosis of arthritis/fibromyalgia. (Tr. at 163-64.) On that date, it appears that Dr. Leo prescribed Motrin and Vicodin, ordered a sedimentation rate, and requested a consultation with the rheumatology department. (Id.) December, 1997 chart notes reflect follow up for plaintiff's complaints of chronic pain. At that time, plaintiff was living in Carson City, Nevada and reported past abuse. (Tr. at 160.) Plaintiff refused to take Vicodin or to try other proffered pain medication because of side effects. (Tr. at 160.)[2] Apparently, plaintiff also refused medication for depression in favor of trying St. Johnswort. (Id.) In January, 1998, plaintiff reported she had stopped taking St. Johnswort. (Tr. at 159.) At that time, plaintiff apparently was to try unspecified medication for six weeks, be rechecked, and then try an SSRI. (Id.) There is no record that plaintiff followed through on this recommendation.

On January 25, 1998, Warren Yu, Orthopedic Surgeon, performed a consultative examination at the request of SSA. (Tr. at 179-84.) Dr. Yu found a mild decrease in range of motion of plaintiff's cervical spine and moderate range of motion decrease of the lumbrosacral spine. (Tr. at 184.) He found plaintiff to have moderate tenderness, with unremarkable neurological exam and gait, and full range of motion in extremity joints. He found plaintiff displayed positive Waddell's signs including overexaggeration and regional tenderness. He questioned the severity of plaintiff's complaints. (Id.) He found plaintiff able to sit, stand and walk for up to 6 hours in an 8 hour day, with

---

[2] Contrary to the ALJ's conclusion that plaintiff had not been prescribed pain medications other than ibuprofen (Tr. at 17), the medical records prior to the four month period in question demonstrate that she previously had been prescribed an array of medication. The ALJ acknowledged as much when he wrote that her records show she is sensitive to medications. (Id.) If the ALJ was referring to records in the four month period at issue, Dr. Leo recommended Vicodin. At one point, it appears that plaintiff refused to take it because of its side effects. Also questionable is the ALJ's conclusion that plaintiff had not been referred to pain management programs. Dr. Leo's October 1998 reference to CDRP, (Tr. at 215), apparently was a reference to a pain management program–"they are experts in pain management." Dr. Leo obviously believed plaintiff could benefit from the program. Plaintiff, however, was described as "reluctant to go."

       occasionally lifting of 50 pounds and frequent lifting of 25 pounds, with free use of the upper extremities. (Id.) At that time, plaintiff reported to Dr. Yu that her only medication was ibuprofen.

       Kaiser records document that plaintiff was examined by a Kaiser rheumatologist, Dr. Steven Orkand, on February 2, 1998, who recommended pool therapy. (Tr. at 232; 225-227.) He diagnosed plaintiff with fibromyalgia, osteoarthritis, and a history of degenerative disc disease.[3] (Tr. at 226.)

       On October 23, 1998, Dr. Leo saw plaintiff who then complained of pain from an infected shave biopsy. Dr. Leo refused to prescribe Demerol unless plaintiff attended "CDRP." (Tr. at 215.) There is no record that plaintiff attended "CDRP."

       On November 24, 1998, Dr. Leo submitted a Medical Assessment of Ability to Do Work Related Activities. He declined to complete the residual functional capacity assessment, deferring to two unidentified rheumatologists. (Tr. at 210.) He stated, however, that plaintiff was totally disabled. (Tr. at 213.)

Findings and Recommendations, at 6-8.

       Medical records submitted after remand comprise about two hundred pages, many of which are duplicative. Those records which are not duplicative do not address the pertinent time period at issue. Carson Tahoe Hospital records which cover the period from January 19, 1999 to September 6, 2000, do not address the impairments at issue here. Although fibromyalgia and osteoarthritis are mentioned as diagnoses, they were not the purpose of plaintiff's visits, and are not based on assessments but rather on plaintiff's reports. No treatment was given for these

\\\\\

---

[3] His report more fully explains that plaintiff was referred to him for evaluation of chronic pain. He stated that plaintiff was intolerant of many medications, and for this reason he did not think that adding further medication would be useful. (Id. at 226.) His exam showed mild osteoarthritic changes in the joints and hands, but no synovitis or swelling. There was mild tenderness in the wrist and hands, and decreased range of motion in index finger flexion. (Id. at 225.) There was full range of motion in the wrists. Shoulder gave discomfort on range of motion testing but showed no crepitus or swelling. Knees had full range of motion with no pain. Ankles and feet contained multiple tender points, but there was no atrophy or swelling. There was increased lumbar lordosis in the back with pain on bending at 30 degrees and extending at five degrees. Although motor strength was probably normal, there was collapsing weakness in the knees, ankles and great toe. Dr. Orkand opined that plaintiff had widespread soft tissue pain syndrome consistent with fibromyalgia as well as early osteoarthritis. (Id. at 226.)

6

conditions. (Tr. at 388, 403.) On September 5, 2000, plaintiff did complain of neck pain. She was prescribed Celebrex. (Id. at 402, 405.)

Kaiser Davis records cover the period July 24, 1997 to July 22, 2003, and therefore those records postdating November,1998 are new evidence. Most of these records which are not duplicative either address problems not related to plaintiff's impairments at issue here, or only refer to earlier diagnoses of fibromyalgia and osteoarthritis without discussion or treatment. (Tr. at 452.)

The new evidence submitted after remand which does focus on fibromyalgia include Dr. Pixley's records. This rheumatologist treated plaintiff between April, 1987 and June, 1994. On June 29, 1994, he opined that she probably had fibromyalgia, and that rheumatoid arthritis should be ruled out.[4] (Tr. at 558.) His examination revealed paraspinal muscle tenderness in the extremities, and trigger points above both scapula, hips, left elbow and right knee. (Id. at 558.) There was also tenderness in the MTP (metatarsophalangeal) joints of both feet and the PIP (proximal interphalangeal) joints. (Id.) He prescribed Elavil and Motrin (800 mg. bid.), and was going to order lab tests to determine if the normal results from the previous year had remained.

On February 11, 1993, plaintiff was diagnosed with de Quervain's syndrome in the right hand. Dorsiflexion was 70 degrees and volar flexion was 60 degrees. Finkelstein's test was positive. (Id. at 555.)

The consultation obtained as the result of the remand was performed by Dr. Haselwood, a rheumatologist, on December 9, 2003. He examined plaintiff and reviewed her records at the request of the Department of Social Services. He found:

> Consistent tenderness across the PIP joints 2, 3 and 4 of the fingers bilaterally with mild decrease fist closure and grip strength but no

---

[4] On the same date, he described it as a "classic" case of fibromyalgia, and possibly a low grade case of rheumatoid disease, despite a negative arthritis profile the previous year. (Tr. at 553, 556.)

> frank swelling. The MCP and wrist joints were clean. Mild to moderate tenderness and guarding at the shoulders with motion limited by approximately twenty-five percent in all planes; no swelling, redness or warmth. Moderate to marked tenderness in the posterior neck with motion limited by approximately 30 percent in all planes. Mild to moderate tenderness at the lumbosacral junction with flexion extension limited by approximately 50 percent. Mild tenderness of the knees without swelling. Variable, somewhat poorly localized diffuse soft tissue tenderness to palpation over the trunk and proximal extremities making it difficult to accurate map any "tender points."

(Tr. at 578-79.)

He diagnosed "chronic, complex and widespread musculoskeletal pain and dysfunction syndrome." It was probably due to osteoarthritis and degenerative disc disease. There was also "non-specific myofascial pain ('fibromyalgia')," and possible low grade rheumatoid arthritis. (Id. at 579.) The most affected areas were the neck, low back, and shoulders. (Id.) In assessing her residual functional capacity, Dr. Haselwood thought she could do sedentary work involving standing and walking up to four hours in an eight hour day, with no sustained forward flexion of the neck or continuous activities of the hands. She could lift or carry up to 15 pounds occasionally and five pounds frequently. (Tr. at 579.)

ANALYSIS

    A.  Whether the New Evidence Obtained After Remand Supports a Finding of Disability

Plaintiff contends that based on the new evidence in the form of Dr. Haselwood's report which stated she could only do sedentary work, she should be found disabled under Rule 201.14 of the grids. She also contends the ALJ erred in giving very little weight to this opinion based on the fact that it was rendered six years after the relevant time period, in light of the very purpose of the remand which was to obtain a rheumatologist's report.

Both parties cite opinions addressing the value of retrospective opinions. In general, medical reports should not be disregarded solely because they are rendered retrospectively. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). In fact, retrospective medical reports are relevant to a prior period of disability. Id. Considerations to be made in

8

whether to give such a report less weight include: whether the report specifically assessed plaintiff's functional capacity prior to the insured's expiration date, whether the medical reports created during the time period at issue made only limited references to limitations in functional capacity; whether intervening circumstances such as a car accident exacerbated the medical condition; and whether the retrospective opinion conflicted with the same physician's earlier opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

The Commissioner is correct that this physician had no personal knowledge of plaintiff's condition prior to 2003, but his opinion of disability after plaintiff's last insured date of December 31, 1997 cannot be rejected solely on this basis. Smith, 849 F.2d at 1225. The ALJ here did reject Dr. Haselwood's opinion on this basis alone, however, and erred in this regard.

This court's prior findings and recommendations focused entirely on a short period of time in 1997 during which the severity of plaintiff's fibromyalgia was at issue. The entire purpose of the remand was for the ALJ to appoint a rheumatologist to render an opinion as to this time period and the effect of fibromyalgia on plaintiff's work abilities. The ALJ did not follow this instruction, but only referred the case for a physician to opine on plaintiff's current condition. After Dr. Haselwood gave his opinion, the ALJ then proceeded to give it "very little weight" because it was based on the most recent medical records, including his own exam, which occurred six years after plaintiff's last insured date. (Tr. at 265.) The ALJ created a situation where the only issue at hand could not be resolved, and then used the nonresponsive result to deny benefits. As the ALJ pointed out, it would have been ideal for a rheumatologist rather than an orthopedist to evaluate plaintiff in 1998. Nevertheless, the ALJ failed to request Dr. Haselwood's opinion as to plaintiff's state in 1997. As a result, this physician did not give a retrospective opinion but only an opinion as to plaintiff's current state. The ALJ is now bound by the instructions he gave to the physician on obtaining the referral, and erred in rejecting the opinion outright. Therefore, the records from the pertinent time period and the current records assessing the appropriate disorder must be reviewed as a whole. Haselwood's report did not

assess plaintiff's functional capacity for the time period at issue, but assessed her current capacity. There were no intervening circumstances, and Dr. Haselwood had not evaluated plaintiff previously. Dr. Haselwood did note that according to the records, plaintiff's symptoms, according to her reports, dated back ten years. (Id. at 577.)

The record as a whole supports this opinion, including almost all of the rheumatologists who had examined plaintiff. Drs. Pixley and Orkand, both rheumatologists, diagnosed fibromyalgia in 1994 and 1998 respectively. Dr. Shapiro, the only other rheumatologist of record, did not give a diagnosis but did order laboratory studies and x-rays to determine the source of her musculoskeletal symptoms and whether she had arthritis. (Id. at 150.) When these four rheumatologists' opinions which cover the period of time before and after the period at issue, are read together, a finding of fibromyalgia reducing plaintiff to sedentary work is supported. Furthermore, plaintiff's treating physicians did not question the opinions of some of these specialists. Drs. Hines, Leo, and Eilers all relied on the opinions of the rheumatologists to whom they referred plaintiff, as well as their own numerous exams of plaintiff wherein they noted multiple trigger point areas of tenderness. See e.g. tr. at 156. The opinions of treating professionals should be given more weight because they have a greater opportunity to know and observe the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

Significantly, of all the physicians who examined plaintiff, only Dr. Yu thought she was exaggerating her symptoms, and only Dr. Yu declined to diagnose fibromyalgia. The vast weight of the evidence is against him, and therefore the ALJ's opinion is not supported by substantial evidence.

Because the court finds that the ALJ should have relied on Dr. Haselwood's opinion that plaintiff could only do sedentary work, plaintiff is therefore disabled under Rule

\\\\\

\\\\\

201.10 of the Guidelines.[5]  For this reason, the court finds no need to address plaintiff's claims that the ALJ erred in finding that plaintiff was not limited in the use of her hands and arms, or that the ALJ failed to properly consider Dr. Leo's opinion, because the resolution of these issues would make no difference to the outcome of this case.

B. Whether the ALJ's Evaluation of Plaintiff's Pain Testimony is Legally Insufficient

Plaintiff contends that the ALJ's evaluation of plaintiff's pain testimony was insufficient.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46.  If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

---

[5] The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).  Plaintiff alleges disability under Rule 201.14 of the grids; however, her ninth grade educational level limits her to Rule 201.10, which results in the same outcome.  (Tr. at 261.)

11

and (3) daily activities.[6] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In this case, the ALJ found plaintiff's complaints of pain to be incredible because there was no evidence of atrophy indicating severe pain based on plaintiff's fibromyalgia, medications taken were not consistent with severe pain, lack of treatment indicated that the pain could not have been as severe as alleged, and Dr. Yu's opinion was that plaintiff exaggerated her symptoms.  (Tr. at 266-67, 184.)

The ALJ put great emphasis on the fact that plaintiff's medications were not consistent with severe pain (tr. at 267); however, the record is replete with references to plaintiff's inability to tolerate medications.  (Tr. at 157, 215, 225.)  Therefore, her failure to take prescribed medication was not unexplained.  Smolen, 80 F.3d at 1284.  Sensitivity to medications sufficiently explains a plaintiff's failure to take them.  Coppejans. v. Sullivan, 811 F. Supp. 427, 430 (S. D. Iowa 1992).

\\\\\

---

[6] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

1　　　　　Dr. Yu's opinion that plaintiff exaggerated her symptoms was not seconded by
2 any other medical source.  Nor is there any other evidence in the record that plaintiff is
3 malingering.  The fact that he was an orthopedist and not a rheumatologist may explain his
4 unfamiliarity with symptoms causing pain.  Finally, the ALJ cites no medical support for the
5 conclusion that fibromyalgia is being faked or exaggerated unless atrophy of muscles is found.
6 The ALJ erred in his credibility analysis which was cursory and incorrect in part.

7 CONCLUSION

8　　　　　The decision whether to remand a case for additional evidence or simply to award
9 benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.
10 1990).  In general, the court will consider factors such as the completeness of the record, the
11 weight of evidence in plaintiff's favor, and the potential harm to plaintiff due to further delay.
12 Social Security Law and Practice, § 55.60 (1987).  In the instant case, all three factors weigh in
13 favor of an award of benefits.  First, the record is complete.  It now contains a rheumatologist's
14 opinion regarding plaintiff's functional capacity and reliance on the grids is appropriate.  Second,
15 the medical records provide substantial evidence for the above-noted limitation.  Third, plaintiff
16 has already waited over nine years, and there is no significant reason to further extend this case.
17 Plaintiff is entitled to finality.  Where, as here, the court determines that substantial evidence in
18 the record as a whole supports a finding that plaintiff is disabled within the meaning of the Act,
19 the court need not remand the case to the ALJ for further proceedings.  Gallant v. Heckler, 753
20 F.2d 1450, 1457 (9th Cir. 1984).  Accordingly, the court finds, based on the record, that plaintiff
21 was disabled as of August 14, 1997, and that there is no need to remand the case for additional
22 substantive findings.

23 \\\\\
24 \\\\\
25 \\\\\
26 \\\\\

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is granted, the Commissioner's Cross Motion for Summary Judgment is denied, and the Clerk is directed to enter Judgment for the plaintiff.

DATED: 2/28/06

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
McDonnell2403.ss.wpjd